IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GLENDA J. LOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05CV1097 |
| | ) | (WO) |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Glenda J. Lott brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On April 23, 2003, plaintiff filed an application for disability insurance benefits. On October 6, 2004, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on March 9, 2005. The ALJ concluded that plaintiff suffered from the severe impairment of degenerative disc disease. (R. 25). He found that plaintiff's impairments, considered in combination, did not

meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform her past relevant work. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On October 7, 2005, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff argues that the ALJ's determination that she retains the residual

functional capacity to perform her past relevant work is not supported by substantial evidence because the ALJ erred in assessing her credibility, failed to accord proper weight to the opinion of her treating physician, failed to consider the combination of her impairments and their functional limitations, and failed to consider her morbid obesity.

*Plaintiff's Subjective Complaints*

Plaintiff's testimony.  Plaintiff, who was 61 years old at the time of the hearing, testified that she worked at the Easy Pay Tire Store in Eufaula for 28 years doing clerical work, waiting on customers, loading and unloading trucks, sweeping, mopping, making deliveries, and "anything that needed to be done."  She quit on April 9, 2003 because, after the store changed ownership, there was "so much pressure and work put on [plaintiff] that [her] back just couldn't take it anymore."  She also stated that the new owners planned to convert from "pencil and eraser type bookkeeping" to computer, that she knows "nothing" about computers and "just didn't have a mind to learn."   She testified that 'with carpal tunnel, I couldn't use, hardly use a adding machine, much less a typewriter or – what do you call it – a keyboard on a computer."  She wears a brace on her right hand every day and has done so for five years.  She is right-handed.  She has "terrible" back pain and cannot sleep without pain medication.  She sleeps in a recliner to take pressure off of her back.  She cannot take a bath, and has to take a shower.  She cannot fix her own hair or put on makeup.  She cannot bend to put her clothes on, but has to have help.  Her neighbor assists her with putting on her bra and shirt; she uses a "gripper" to pull up her pants.  She cannot use a vacuum cleaner.  When she uses a broom, it takes a long time to sweep a room.  She has used

3

a walking stick for a year and a half because she feels like she is going to fall over. Her blood pressure goes up and makes her feel "fainting," and she does not have any energy. She has an automobile and drives "some." She can't see out of one eye. It is hard to focus with one eye, so it takes her a long time to read something. On a typical day, she gets up and has coffee and cereal. She reads the newspaper, which is delivered to her front door, then she walks "back and forth" or gets in the shower. She lies down sometime during the day, mostly in the recliner. She sleeps an average of three to four hours a night, thirty minutes to an hour at a time. She can stand for ten or fifteen minutes before she has to sit; can walk no more than fifteen minutes before she needs to stop; and can sit no more than thirty minutes before she has to get up. She can lift no more than a five-pound bag of sugar. (R. 189-98).

Eleven Circuit Pain Standard. In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The standard also applies to complaints of subjective conditions other than pain." Holt, *supra*, 921 F.2d at 1223. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the

4

claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. The reasons articulated by the ALJ must be "explicit, adequate, and supported by substantial evidence in the record." Preston v. Barnhart, 2006 WL 1785312, *1 (11th Cir. Jun. 29, 2006)(unpublished opinion)(citing Hale v. Bowen, 831 F.2d 1007, 1011-12 (11th Cir. 1987)). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[1] "The credibility determination does not need to cite ''"particular phrases or formulations'" but it cannot merely be a broad rejection which is '"not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole."'" Dyer, *supra*, 395 F.3d at 1210 (citations omitted).

ALJ's Analysis. Plaintiff argues that the ALJ's application of the pain standard was erroneous. In rejecting plaintiff's testimony of disabling symptoms, the ALJ found that "it

---

[1] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

is credible that the claimant experiences some pain, but it is not credible that she experiences the level of such discomfort to the extent alleged." (R. 24). Consistent with the Eleventh Circuit pain standard, the ALJ listed his reasons for this conclusion: (1) plaintiff's reported activities of daily living; (2) plaintiff sought very little treatment for her alleged symptoms; (3) plaintiff had not required hospitalization for pain; and (4) she declined injections or epidurals to try to alleviate the pain. (R. 24).

The court agrees, as plaintiff argues, that plaintiff's reported activities of daily living are an insufficient basis for rejecting her testimony of disabling pain. (See R. 194-95). However, the ALJ has articulated a number of additional reasons for discrediting plaintiff's subjective testimony. Plaintiff contends that she "has continually sought treatment for her pain" (Doc. # 13, p. 15) and that the ALJ's finding to the contrary is not supported by fact. Plaintiff was regularly treated for back pain between January and July 2003. (Exhibits 3F, 4F). However, the medical evidence includes no records of treatment for the 13-month period between July 10, 2003 and August 17, 2004. (R. 130, 169). As the ALJ notes, there is no evidence that plaintiff was hospitalized due to pain; this is so despite plaintiff's description of her back pain to the consultative examiner as a "level 10 all the time." (R. 147). Dr. Woodham, plaintiff's treating neurologist, noted during plaintiff's June 16, 2003 office visit – the last visit to Dr. Woodham included in the record – that "[t]he patient is a candidate for a transforaminal injection or possibly epidural. She is not interested in having this done yet. I told her that I would give her some medicines then we would see her back and continue to follow loosely." (R. 120).

The ALJ found plaintiff's testimony credible to the extent that she experiences some pain and is limited to light work. The court concludes that the ALJ's evaluation of plaintiff's subjective complaints is supported by substantial evidence. See Dyer, *supra*, (ALJ properly considered frequency with which plaintiff sought medical treatment); Wolfe v. Chater, 86 F.3d 1072 (11th Cir. 1996)(ALJ properly considered conservative nature of treatment in assessing credibility).

*Plaintiff's Other Impairments*

Plaintiff contends that the ALJ erred in evaluating her carpal tunnel syndrome, hypertension,[2] vision problems and obesity by: (1) failing to find these impairments to be severe; and (2) failing to consider them in combination with her degenerative disc disease. It is apparent that the ALJ considered all of these impairments, as he explicitly discussed each of them in his analysis of severity. (R. 22-23).[3] Since the ALJ found that plaintiff

---

[2] Plaintiff concedes that her hypertension is well-controlled and not severe (Doc. # 13, p. 9 n. 6) but also argues that the ALJ erred by failing to find it to be severe (id. at p. 17).

[3] Citing Dr. Bush's treatment notes and Dr. Bendinger's consultative report, the ALJ noted that plaintiff's blood pressure was well controlled on medication. He also cited evidence of record that although plaintiff had blurry vision in her right eye, her vision in the left was corrected to 20/40 and, moreover, that she had a steady and lengthy work history despite her report that she has had vision problems in her right eye for 20-25 years. The ALJ further observed that, according to plaintiff's testimony, she worked for at least three years with a wrist brace and that the plaintiff had not alleged any limitations due to her obesity. (R. 22-23). These observations are supported by the evidence. (See Exhibits 4F, 5F and R. 193). At her first visit with Dr. Bush, in February 1999 -- more than four years before the alleged onset date -- plaintiff weighed 214 pounds. (R. 136). "There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment. Neither do descriptive terms for levels of obesity (*e.g.*, 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes." SSR 02-1p, 2000 WL 628049 at * 4. The severity of obesity is determined by assessing, in each individual case, the obesity's impact on the claimant's ability to perform work-related functions. Id.

suffered from the "severe" impairment of degenerative disc disease and, therefore, proceeded beyond step two of the sequential analysis, any error in failing to classify plaintiff's additional impairments as "severe" is harmless. See McKiver v. Barnhart, 2005 WL 2297383 (D. Conn. 2005)("While plaintiff is correct that the ALJ, at step two, should screen out only *de minimis* claims, the ALJ in this case did not screen out plaintiff's claim at step two. Rather, based on his finding of a severe *physical* impairment, he continued with the five-step sequential evaluation process, finding her 'not disabled' at step four based upon her residual functional capacity to perform her past relevant work. Thus, his failure to find that her mental impairment was 'severe' or to consider a combination of her physical or mental impairments [at step two] was, at worst, harmless error.")(citations omitted)(emphasis in original); see also Street v. Barnhart, 340 F.Supp.2d 1289, 1293-94 (M.D. Ala. 2004), *affirmed*, 133 Fed. Appx. 621 (11th Cir. May 18, 2005)(failure to list low IQ as a distinct severe impairment was harmless error where ALJ referred to plaintiff's "borderline intellectual functioning" in his decision and considered plaintiff's "severe and not severe impairments" in combination in subsequent analysis).

    Plaintiff correctly notes that, even if the ALJ found these impairments to be non-severe, he was obligated to consider them in combination with her severe impairments in assessing her claim. See Jones v. Dept. of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991). Plaintiff contends that the ALJ failed to consider her impairments in combination. In Wilson v. Barnhart, 284 F.3d 1219, 1244 (11th Cir. 2002), the Eleventh Circuit held that an ALJ's statement that "'the medical evidence establishes that [Wilson] had

8

[several injuries] which constitute a 'severe impairment,' but that he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4'" was "evidence that he considered the combined effects of Wilson's impairments." (alterations and emphasis in original).  The Eleventh Circuit rejected the District Court's determination that the ALJ had failed to discuss the cumulative effects of the plaintiff's impairments.  In the present case, the ALJ likewise found that the plaintiff does not have "an impairment *or combination of impairments* that meets or equals any impairment listed in Appendix 1, Subpart P, Regulations No. 4."  (R. 25, Finding no. 4).  This statement constitutes evidence that the ALJ considered plaintiff's impairments in combination and, thus, plaintiff's argument to the contrary is without merit.

*Weight Accorded to Medical Opinions*

Plaintiff argues that the ALJ failed to accord proper weight to the opinion of Dr. Bush, her treating physician, and the opinion of Richard Bendinger, D.O., the consultative examiner.

> The ALJ must state with particularity the weight given different medical opinions and the reasons for doing so, and failure to do so is reversible error. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists.  20 C.F.R. § 404.1527(d)(1), (2) & (5).  The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).

Davis v. Barnhart, 2006 WL 2038751, *2 (11th Cir. Jul. 21, 2006)(unpublished opinion).

The opinion of a treating physician . . . "must be given substantial or

9

> considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). [The Eleventh Circuit] has concluded "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. Id. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons. Id.

Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

On August 17, 2004, at plaintiff's request, Dr. Bush completed a clinical assessment of pain form and a medical source statement. On the pain questionnaire, Dr. Bush circled responses indicating his opinion that plaintiff's "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work"; that physical activity will cause "[g]reatly increased pain and to such a degree as to cause distraction from task or total abandonment is [sic] task"; and that side effects of prescribed medication "can be expected to be significant and to limit effectiveness due to distraction[,] inattention[,] drowsiness, etc." (R. 166). In the medical source statement, Dr. Bush indicated, *inter alia*, that plaintiff could lift five pounds frequently and ten pounds occasionally, that she could stand or walk less than one hour and must take breaks, that she can sit continuously for less than one hour, that she would need a one hour break in addition to morning, lunch and afternoon breaks, and that she is likely to be absent from work more than four days per month as a result of her impairment and/or treatment. (R. 167-68).

The ALJ found that the opinions contained in the forms completed by Dr. Bush were entitled to no weight. (R. 22). The ALJ clearly articulated several reasons for this determination: (1) Dr. Bush's opinions expressed on the forms are inconsistent with the

existing medical evidence in the file and Dr. Bush's own treatment notations; Dr. Bush "did not conclude in his treatment notations that the claimant was significantly limited or disabled in any way by her impairments or symptoms"; (2) "Dr. Bush's specialty lies in family practice, not neurology or any other area that could provide him with the expertise to make judgments about the effects musculoskeletal disease has on an individual's functional capacity"; (3) "there is no evidence that the claimant been hospitalized for pain or that she sought or received frequent treatment for such pain"; (4) "in July 2003, the claimant indicated to Dr. Bush that she was seeing Dr. Woodham, her treating neurologist, for her continued back pain; however, according to Dr. Woodham's treatment notations from June 2003, the claimant was not interested in transforaminal injections or epidurals"; (5) in June 2003, "Dr. Woodham indicated that he would give the claimant some medicines and continue to follow loosely; however, there is no evidence that the claimant sought any further treatment from Dr. Woodham"; (6) there is no evidence that plaintiff sought or received treatment from Dr. Bush between July 2003 and August 2004, when she presented requesting that Dr. Bush complete disability forms; and (7) Dr. Bush's indication on the pain assessment regarding drug side effects is not supported because the "evidence of record does not reflect any longitudinal side effects resulting from [plaintiff's] pharmacological regimen." (R. 21).

In her brief, plaintiff challenges only the first of these reasons. (Doc. # 13, pp. 13-14). The ALJ correctly notes that Dr. Bush's treatment records do not – before the August 2004 visit in which plaintiff asked him to complete disability forms – include any opinion that plaintiff was significantly impaired or disabled by her impairments. (Exhibit 4F).  Plaintiff

11

argues that this fact is not significant because treatment notes are not prepared in anticipation of a disability hearing. Even if this particular fact is of limited significance, however, the ALJ also stated that the opinion is inconsistent with the medical evidence. Dr. Bush ordered an MRI for plaintiff's January 2003 complaint that her back pain had resurfaced. The MRI "confirm[ed] spinal canal stenosis, foraminal narrowing & some disk bulging." (R. 131; 138-39). At plaintiff's request, Dr. Bush then referred her to Dr. Woodham, a neurologist, for treatment. (Id.). Plaintiff twice thereafter visited Dr. Bush – in March 2003 and in July 2003 – for follow-up of her hypertension. On both occasions, Dr. Bush noted that plaintiff was "followed by Dr. Woodham" for her low back pain. (R. 130). Dr. Bush did not see plaintiff again until the August 2004 visit. The objective evidence upon which Dr. Bush based his opinion of disability was the January 2003 MRI report. (R. 168). However, when plaintiff presented to Dr. Woodham – the treating specialist – on January 30, 2003, he noted that she had "a completely normal general physical examination," a negative straight leg raise test, and pain on palpation and percussion of the back "but no other findings" and that she was "very jocular and interactive." (R. 125-26, 165). Additionally, he stated, "She has had an MRI scan that I have reviewed. This shows some degenerative disc disease, *but this clearly does not explain her difficulty*." (R. 126)(emphasis added). On February 28, 2003, when plaintiff told Dr. Woodham that she could no longer do her job and was thinking about retiring, he noted, "I do not have a good opinion about that one way or the other." (R. 123). Dr. Woodham treated plaintiff in April 2003 with bilateral facet joint injections which plaintiff later reported gave her no relief, "not even transient short-term relief." (R. 120).

Dr. Woodham noted that plaintiff "does have significant chronic low back pain and leg pain on the right side;" however, she was "not interested" in having a transforaminal injection or epidural. Dr. Woodham indicated that he would give plaintiff medications and continue to follow her "loosely." (Id.). Dr. Woodham's treatment notes include no record of further treatment after June 2003. (Exhibit 3F). The ALJ correctly observes that the medical records include no evidence of longitudinal side effects of medication. The court concludes that the reasons articulated by the ALJ for rejecting Dr. Bush's opinion of disability are adequate and supported by substantial evidence. See Phillips, *supra*, 357 F.3d at 1241 ("In sum, the ALJ articulated several reasons for giving less weight to the treating physician's opinion. Thus, this Court readily concludes that the ALJ's determination that Dr. Schatten's opinion should be given little weight is supported by substantial evidence.").

     Plaintiff also argues that the ALJ also erred by discounting the opinion of the consultative examiner, Richard Bendinger, D.O., and by relying on the contrary opinion of state agency non-examining consultants. (Doc. # 13, p. 11). Dr. Bendinger noted that plaintiff "has an increase in lumbarlordosis, a slight increase in thoracic kyphosis. She has a prominent thoracic bulge, palpable tenderness noted and also some scoliosis in her lower lumbar spine. She was unable to squat and rise and unable to heel and toe walk." (R. 149). He concluded that plaintiff "appears to have some significant problems in the lum[b]ar spine preventing her from doing alot [sic] of physical activity. By her history, the patient doesn't even carry the garbage out at home because of her back pain." (R. 151). He stated, "Based on my medical findings, the patient's ability to do work related activities such as sitting,

13

standing, walking, lifting, and carrying, would be limited by her chronic low back pain. Handling objects limited to a degree by her right carpal tunnel syndrome. Hearing and speaking is unimpaired. Traveling would be unimpaired for short distances." (R. 150). The ALJ found that this opinion as to plaintiff's functional limitations was entitled to little weight. (R. 20). The ALJ stated:

> The claimant was examined by Richard L. Bendinger, Jr., D.O. in July 2003 pursuant to her application for benefits. At that time, the claimant reported chronic back pain, which she rated constant at a level of 10 and unrelieved with medication, as well as numbness in her right leg. According to the report offered by Dr. Bendinger, the claimant's ability to handle objects was limited to a degree by carpal tunnel syndrome, and that the claimant had significant problems in the lumbar spine preventing her from doing a lot of physical activity[] (Exhibit 5F).
>
> The Administrative Law Judge is not compelled to agree with the functional limitations set forth by Dr. Bendinger and assigns little weight to his opinion. In this case, Dr. Bendinger's discussion of the claimant's limitations was grossly inconsistent with his own narrative report. Dr. Bendinger noted that based on his medical findings, the claimant's ability to do work related activities such as sitting, standing, walking, lifting and carrying would be limited by her chronic low back pain, yet he noted in his report that she walked over twenty feet with a normal tandem gait and she had no marked motor loss or sensory abnormality. Dr. Bendinger further stated that the claimant's primary affected extremity was her right hand. He indicated that she had carpal tunnel syndrome and repetitive work with her right hand would be difficult. Even so, he noted that the claimant could make a fist, oppose her thumb to her fingers. Her grip strength was 4, general muscle strength was 4. The claimant was able to button her clothes, tie her shoes, pick up small objects, hold a glass and turn a door knob.

(R. 20). The ALJ noted that there is no longitudinal evidence in the record from plaintiff's treating source to support Dr. Bendinger's opinion and – citing Dr. Bendinger's reference in his conclusion to plaintiff's reported inability to carry out the garbage – stated that it

14

appeared that Dr. Bendinger "may have relied on the claimant's statements regarding her limitations." (R. 20-21). Later in his opinion, the ALJ observed that plaintiff had, according to her testimony, worked at her job for at least three years while wearing a wrist brace. (R. 23, 193). The court concludes that the reasons articulated by the ALJ for according little weight to Dr. Bendinger's opinion regarding plaintiff's functional limitations are supported by substantial evidence.

The ALJ credited the opinions of state agency physicians that plaintiff's impairments did not prevent her from performing her past relevant work as that work is normally performed in the national economy, finding them to be supported by the record as a whole. (R. 23; see also R. 29-30; 156-62).[4] Plaintiff argues that "[t]he Eleventh Circuit has consistently held that the opinion of a reviewing, non-examining physician, when contrary to those opinions of examining physicians, is entitled to little weight, and does not constitute substantial evidence." (Doc. # 13, p. 11). Plaintiff's statement of the law is not entirely accurate. It is correct that the opinion of a non-examining physician – "*standing alone*" – does not constitute substantial evidence when contrary to the opinion of examining physicians. Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987)(emphasis added). However, where the ALJ has – as here – stated "good cause" for rejecting the opinions of an

---

[4] Dr. Stephenson, the non-examining state agency physician who completed an RFC assessment on July 31, 2003, stated that he disagreed with Dr. Bendinger's functional limitations because Dr. Bendinger's examination of the claimant showed that she has grossly normal range of motion in her back, normal locomotor, negative straight leg raise, and grip within normal limits and that she can make a fist, oppose her thumb to her fingers, button her clothes, tie her shoes, pick up small objects, hold a glass and turn a door knob. (R. 158, 162).

15

examining or treating physician, the ALJ may credit the contrary report of a non-examining physician. See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986)("Jones contends that the ALJ erred by crediting the reports of non-examining, non-treating physicians. It is not improper, however, for an ALJ to consider such reports – as long as the opinion of the treating physician is accorded proper weight. And, as we stated before, the Secretary in this case stated 'good cause' for not according Jones's treating physician's opinion the 'substantial weight' normally required. Thus, the Secretary did not err.").

*Past Relevant Work*

Plaintiff's appears to suggest that the ALJ did not develop evidence of the physical requirements of her past relevant work. (Doc. # 13, p. 11). However, it is clear that a step four decision may also be based on a determination that "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61. "The Dictionary of Occupational Titles (DOT) descriptions can be relied upon – for jobs that are listed in the DOT – to define the job as it is usually performed in the national economy." Id.

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. . . . [I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'"

Id. The ALJ found that plaintiff was able to perform her past relevant work as a "clerk/salesperson, automobile accessories as that occupation is performed in the national

16

economy." In reaching this conclusion, he relied on the description of that job in the DOT. (R. 25). The record included evidence that the plaintiff concurred that the job description for DOT # 273.357-030 ("Salesperson, Automobile Accessories) describes the job she held. (R. 98-99). The ALJ noted that the job is "light semiskilled work requiring frequent reaching and handling. It requires no balancing, kneeling, crouching, crawling or feeling and only occasional climbing, stooping, fingering and near acuity." (R. 25; see also R. 98). The ALJ found that plaintiff had done this work within the last fifteen years, long enough to learn how to do it and at a level to be considered substantial gainful activity. He concluded that plaintiff has no physical or mental limitations in performing light work and, thus, that this occupation does not exceed her residual functional capacity. The court finds that the ALJ adequately developed the record regarding plaintiff's past relevant work, as that work is performed in the national economy.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. A separate judgment will be entered.

Done, this 4th day of October, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE